Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 460
Pasadena, CA  91101
Tel:  (626) 795-4700
Fax:  (626) 795-4790

Adam C. Smedstad (SBN 303591)
asmedstad@scopelitis.com
SCOPELITIS GARVIN LIGHT HANSON AND FEARY, PC
30 West Monroe Street Suite 600
Chicago, IL  60603
Tel.:  (312) 255-7200
Fax:  (312) 422-1224

Attorneys for Plaintiff,
California Trucking Association

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, a California Non-Profit Corporation,<br><br>            Plaintiff,<br><br>v.<br><br>JULIE SU, in her official capacity as Labor Commissioner of the California Department of Industrial Relations,<br><br>            Defendant. | Case No.: 3:16-cv-01866-CAB-MDD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE CLAIM |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
COMPLAINT FOR FAILURE TO STATE CLAIM

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    A.    Motion to Dismiss Standard .............................................................. 4

    B.    The Application of the *Borello* Test to Owner-Operators Has A Significant Impact Related to Congress' Deregulatory And Pre-Emption Related Objectives ...................................................... 4

    C.    The Commissioner's Motion Cites No Authority That Defeats CTA's Claims As A Matter of Law ................................................... 9

CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Am Trucking Ass'ns, Inc. v. City of Los Angeles*,
 559 F.3d 1046 (9th Cir. 2009) ...................................................................5

*American Airlines, Inc. v. Wolens*,
 513 U.S. 219 (1995) ................................................... 2, 5, 6, 7, 8, 9, 11

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................4

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
 153 F.3d 1184 (9th Cir. 1998) ...................................................................9

*Dan's City Used Cars, Inc. v. Pelkey*,
 133 S.Ct. 1769 (2013) ...................................................................2

*Dilts v. Penske Logistics, LLC*,
 769 F.3d 637 (9th Cir. 2014) ...................................................................9

*Mass. Delivery Ass'n v. Coakley*,
 769 F.3d 11 (1st Cir. 2014) ...................................................................2

*N. Star Int'l v. Ariz. Corp. Comm'n*,
 720 F.2d 578 (9th Cir. 1983) ...................................................................4

*Nw. Airlines, Inc. v. Ginsberg*,
 134 S. Ct. 1422 (2014) ............................................................ 2, 5, 6, 7, 9, 10, 11

*People ex rel. Harris v. Pac Anchor Transportation, Inc.*
 59 Cal.4th 772 (2014) ...................................................................10

*Rowe v. New Hampshire Motor Transp. Ass'n*,
 552 U.S. 364 (2008) ................................................................. 2, 4, 5, 10

*Ruiz v. Affinity Logistics, Corp.*,
 667 F.3d 1318 (9th Cir. 2013) ...................................................................10

*S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*,
 697 F.3d 544 (7th Cir. 2012) ...................................................................8

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*,
 48 Cal.3d 341 (1989) ................................................................. 2, 4, 5, 7, 11

*Schwann v. FedEx Ground Package System, Inc.*,
 813 F.3d 429 (1st Cir. 2016) ...................................................................8

**Statutes**

ii
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE CLAIM

49 U.S.C. § 14501(c) ...................................................................................................1

**Rules**

Cal. Civ. Code § 1689(b)(1) ........................................................................................9

**Regulations**

49 C.F.R. § 376.12 ......................................................................................................7

Plaintiff, California Trucking Association ("CTA") respectfully submits the following points and authorities in opposition to Defendant Julie Su's, in her official capacity as Labor Commissioner of the California Department of Industrial Relations (the "Commissioner"), Motion to Dismiss Complaint for Failure to State A Claim.

## INTRODUCTION

Prior to 1980, both federal and state governments regulated the transportation industry. The regulations dictated, both directly and indirectly, how transportation services could be provided and the prices that could be charged for those services. In 1980, Congress passed the Motor Carrier Act deregulating interstate trucking. 94 Stat. 793. Congress proceeded to deregulate *intrastate* trucking in 1994 when it passed the Federal Aviation Administration Authorization Act ("FAAAA"). To effectuate deregulation, the FAAAA expressly preempts any state law or claim advanced under state law that would impact the prices, routes, or services that transportation companies, including motor carriers and brokers, provide. 49 U.S.C. § 14501(c).

By deregulating the transportation market Congress liberated participants in the transportation industry to devise their own methods for transporting freight; allowing the marketplace, not states to determine the manner in which they did so. Effectuating this policy decision requires more than just eliminating federal regulation (and prohibiting state regulation) on the front end. Parties must have assurance that the terms upon which they agree will be honored. "The stability and efficiency of the market depends fundamentally on the enforcement of agreements

freely made based on the needs by the contracting parties at the time." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 230 (1995).[1]

Twice the United States Supreme Court has considered whether a state law can provide the basis to alter or disregard the contractual terms agreed to in the free market and both times found the claims preempted. Only breach of contract claims, which are based on alleged failure to honor "the parties' voluntary undertaking," fall outside the scope of federal preemption. *Nw. Airlines, Inc. v. Ginsberg,* 134 S. Ct. 1422, 1430 (2014). With this delineation, if a motor carrier "acquires a reputation for mistreating" its owner-operators, the market allows those owner-operators to contract on more favorable terms with a rival carrier. *Id.* at 1433.

The CTA seeks a declaration that the FAAAA preempts the Commissioner's use of California State law – as embodied in the *Borello* test – as a basis to ignore the written contractual agreements between owner-operators and motor carriers. *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341 (1989). The Commissioner's Motion to Dismiss offers no basis to conclude that the CTA's

---

[1] Although *Wolens* was decided under the Airline Deregulation Act ("ADA"), Congress modeled the FAAAA preemption language on the ADA preemption clause. *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). Consistent with the FAAAA's text and history, the Supreme court has instructed that, interpreting the FAAAA's preemption provision, courts should follow decisions interpreting the ADA's preemption clause. *Id.* at 371.  However, in 2013, the Supreme Court explained that "for the purpose of FAAAA preemption, it is not sufficient that a state law relates to the price, route, or service of a motor carrier in any capacity; the law must also concern a motor carrier's transportation of property." *Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769, 1778-79 (2013) (internal quotations omitted).  There can be no question here that the Commissioner's application of the *Borello* test to owner-operators relates to the transportation of property, as the owner-operators contracted with CTA's motor carrier members to transport property under each motor carrier's federal authority. Any claim that would alter "the classification" of drivers "clearly concerns a motor carrier's 'transportation of property.'" *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 23 (1st Cir. 2014).

Complaint fails "to state a claim upon which relief can be granted" and cannot survive the Supreme Court's pronouncements on the scope of preemption.

## BACKGROUND

The CTA is an association devoted to advancing the interests of its motor carrier members who provide transportation services in California. *Complt.*, ¶ 15. CTA's members are licensed motor carrier companies that manage, coordinate, and schedule the movement of property throughout California in interstate commerce through motor carrier permits issued by the Federal Motor Carrier Safety Administration ("FMCSA"), a division of the U.S. Department of Transportation ("DOT"). *Id.*, ¶ 16. When it is economically efficient to do so, CTA members provide motor carrier services to customers by engaging independent contractor, owner-operators. *Id.*, ¶ 17. CTA member motor carriers and the owner-operators with whom they contract, memorialize the terms of their agreement in written contracts. *Id.,* ¶ 24.

Pursuant to the terms of those contracts, owner-operators agree to provide a truck, a qualified driver to operate their truck, and to bear the expenses associated with operating the truck they lease to the motor carrier. *Id.,* ¶¶ 25-26. In return, the motor carrier provides freight for the owner-operator to haul (under the motor carrier's federal operating authority) and compensates the owner-operator for hauling that freight in accord with the compensation agreed upon in the contract between the parties. *Id.,* ¶ 27.

Claims that impair the enforcement of free market arrangements entered into between owner-operators and motor carriers, either by forcing the use of company drivers or by altering the financial arrangements and incentives agreed upon by the parties, introduce inefficiency into the transportation services market and are inconsistent with Congress' deregulatory goal. *Id.,* ¶ 28. The Commissioner, as she acknowledges in her Motion, is responsible for enforcing California's labor laws.

3
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
COMPLAINT FOR FAILURE TO STATE CLAIM

*Id.*, ¶ 19. In this capacity, the Commissioner regularly applies California's common law *Borello* test to assess whether, notwithstanding the terms of his contract, *California* considers the owner-operator an employee. *Id.*, ¶ 20. The Commissioner's efforts to make this assessment, whether at her own instance or at the request of an owner-operator who is dissatisfied with the contractual arrangement he reached, introduce inefficiency into the transportation services market and are inconsistent with deregulation. *Id.*, ¶ 36.

## ARGUMENT

### A.  Motion to Dismiss Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a motion to dismiss, a plaintiff must only allege sufficient facts to state a claim to relief "that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.  The Application of the *Borello* Test To Owner-Operators Has A Significant Impact Related to Congress' Deregulatory And Pre-Emption Related Objectives.

In enacting the FAAAA, Congress' "overarching goal [wa]s [to] help[] ensure transportation rates, routes, and services that reflect the maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (internal quotations omitted). To that end, the Supreme Court determined under the FAAAA: "(1) that state enforcement actions *having a connection with, or reference to*, carrier rates, routes, or services, are preempted; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal

regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption related objectives." *Rowe*, 552 U.S. 364, 370-71 (internal quotations omitted) (emphasis in original).

The Court has further explained that the "ban on enacting or enforcing any law 'relating to rates, routes, or services is most sensibly read . . . to mean States may not seek to impose its own public policies or theories of competition or regulation on the *operations of* [a motor] carrier." *Wolens*, 513 U.S. at 229 n.5 (emphasis added). The Commissioner's application of the *Borello* test represents precisely the type of state policy judgment the FAAAA was intended to preempt.

First, the Commissioner's treatment of the cases applying the *Borello* test to owner-operators makes clear the Commissioner's use of the *Borello* test to "re-classify" owner-operator drivers as employees is predicated on a state law. *See S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341 (1989); *see also Def.'s Mem.* at 6-11 (ECF No. 4-1).

Second, the Ninth Circuit has previously held that the FAAAA prohibits California from imposing its policy judgment favoring employees over owner-operators because doing so was a "rather blatant attempt to decide who can use whom for [delivery] services" and was therefore "a palpable interference with prices and services." *Am Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1056 (9th Cir. 2009). That the *Borello* test is a creature of common law and not of statute is of no moment; the FAAAA's "deregulatory aim can be undermined just as surely by a state common law rule as it can be a state statute or regulation." *Ginsberg*, 134 S.Ct. at 1430. The issue upon which preemption turns, is not whether the motor carrier *satisfies* or *can satisfy* the state's policy judgment, but rather whether the application of the state's policy judgment to a motor carrier has "*a connection with, or reference to*, carrier rates, routes, or services." *Rowe*,

5
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
COMPLAINT FOR FAILURE TO STATE CLAIM

552 U.S. at 370. If it does, the claim predicated on that state policy judgment is preempted.

The Supreme Court' most recent treatment of this issue in *Ginsberg* highlights this point. 134 S.Ct. 1422. Rabbi Ginsberg was an extremely frequent flier on Northwest Airlines and a "Platinum Elite" member of their WorldPerks rewards program's benefits. *Id.* at 1427. After extensively availing himself of the rewards program, Northwest terminated his membership, apparently in reliance on a provision of the WorldPerks agreement that provided "[a]buse of the . . . program (including . . . improper conduct as determined by [Northwest] in its sole judgment [ ) ] . . . may result in cancellation of the member's account." *Id.* at 1426. Ginsberg filed a class action on behalf of himself and all other similarly situated WorldPerks members alleging: (1) breach of contract, (2) violation of the duty of good faith and fair dealing, (3) negligent misrepresentation, and (4) intentional misrepresentation. *Id.* at 1427. By the time the case made it to the Court, only Rabbi Ginsberg's individual claim for violation of the duty of good faith and fair dealing remained. *Id.*

The Court began by noting that "state common-law rules fall comfortably with the language of the [FAAAA] preemption provision." *Id.* at 1428. To find otherwise would render unnecessary the Court's prior holding in *Wolens* that excluded "a single subcategory of common-law claims, *i.e.,* those based on the parties' voluntary undertaking, as falling outside [the FAAAA's] coverage." *Id.* at 1430. After concluding parties to the frequent flier contract could not contract around Minnesota's covenant of good faith and fair dealing, the Supreme Court held that Rabbi Ginsberg's claim predicated on this state law policy judgment was preempted. *Id.* at 1433. The Court's preemption determination turned on the application of the state law, not whether the air carrier could satisfy that law.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE CLAIM

CTA's request for a declaration that the FAAAA preempts the Commissioner's continued application of state law as a basis to potentially alter or impair the enforcement of the contractual arrangements agreed upon in the free market is no different. Claims advanced under the *Borello* test seek a determination at odds with the contractual terms between owner-operators and motor carriers – declaring them to be employees under California law and upending the basis on which the parties agreed to transport property. This has a significant and adverse impact on the FAAAA's ability to achieve its deregulatory and pre-emption related objectives. Owner-operators enter into independent contractor agreements to "transport property" under CTA's motor-carrier member's operating authority pursuant to the Federal Leasing Regulations, which require a written agreement containing certain terms between the motor carrier and independent contractor. *See* 49 C.F.R. § 376.12. When the Commissioner applies the *Borello* test to these owner operators for the purpose of determining whether they should be treated as employees under California law, it is an impermissible attempt to re-order the contractually agreed upon relationship between the owner-operator and the motor carrier according to a state policy. As the Court recognized in *Ginsberg*, substituting state policy for the bargained for agreement of the parties disrupts the deregulatory aim of the FAAAA because the "best interests" of market participants are "most effectively promoted, in the main, by allowing the free market to operate." *Ginsberg*, 134 S.Ct. at 1433.

Put differently, the deregulatory aim of the FAAAA is to ensure that the transportation industry is shaped by market forces, not state policy. "Market efficiency requires effective means to enforce private agreements. The stability and efficiency of the market depends fundamentally on the enforcement of agreements freely made based on the needs by the contracting parties at the time." *Wolens*, 513 U.S. at 230. Allowing the Commissioner to alter, disrupt, or disregard the

agreements entered into by owner-operators and motor carriers creates market inefficiency by replacing private contractual undertakings with state policy determinations. This in turn creates uncertainty regarding the parties' ability to rely on and enforce the terms of their agreement. Indeed, a claim that attempts to alter the manner in which transportation company provides its services "is inconsistent with the [FAAAA's] deregulatory purpose, since it imposes one system for those that the market might develop." *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 552 (7th Cir. 2012).

The First Circuit recently reached precisely this conclusion under Massachusetts law in *Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016). In *Schwann*, the First Circuit considered whether the FAAAA preempted an employee re-classification claim advanced under a provision of the Massachusetts Independent Contractor Statute. *Id.* at 432. In deciding the claim was preempted, the court reasoned that "[t]he decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business." *Id.* at 438. It concluded imposing the state's policy judgment about such a decision violates the mandate of the FAAAA because "[s]uch an application of state law poses a serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them." *Id.*

This does not mean, however, that owner-operators are left without a remedy. The FAAAA does not preempt state law claims designed to enforce the contractual agreements that transportation companies reach. *Wolens*, 513 U.S. at 233. So, if an owner-operator was duped into entering an independent contractor agreement or had a gun held to his head and was forced to sign it, he could argue that no contract was formed because it was not freely made. Cal. Civ. Code §

1689(b)(1) (permitting a party to rescind a contract if its consent was "given by mistake, or obtained through duress, menace, fraud, or undue influence"). Were the owner-operator to succeed on that argument, he would be free to rescind the contract. *Id.* Similarly, an owner-operator is free to argue that the motor carrier breached the agreement. *See Ginsberg*, 134 S.Ct. at 1433. However, when the parties have freely entered a contract and performed under it, the FAAAA's deregulatory goal demands that the contract be honored and enforced. *Wolens*, 513 U.S. at 230.

### C. The Commissioner's Motion Cites No Authority That Defeats CTA's Claims As A Matter of Law.

The Commissioner's Motion relies on a string of Ninth Circuit cases holding that generally applicable state wage and hour laws are not pre-empted by the FAAAA. Not a single one of those cases is applicable to CTA's claims. Those cases analyze whether the FAAAA preempts the application of California labor code provisions to the operations of motor carriers who have *chosen* to use employees to transport freight. Neither *Mendonca* nor *Dilts* considered a fundamental re-ordering of a freely bargained contractual agreement between an owner-operator driver and a motor carrier according to state policy, without reference to the agreement itself. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 153 F.3d 1184, 1185 (9th Cir. 1998) (holding that application of California's prevailing wage law to employee drivers is not pre-empted); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014) (holding that the FAAA does not pre-empt the application of California's meal and rest break laws to employee drivers). The application of wage and hour laws to drivers who were hired as employees is analytically distinct from using state law to upend freely-bargained for and agreed to contractual arrangements between owner-operators and motor carriers.

Finally, *People ex rel. Harris v. Pac Anchor Transportation, Inc.*, the only case the Commissioner cites that actually addresses whether the FAAAA preempts a state law misclassification claim, does not compel this Court to dismiss CTA's complaint. 59 Cal.4th 772 (2014).  First, *Harris* is a state court opinion interpreting federal law and is not binding on this Court. More importantly, *Harris* relies on the fallacy that in order to be pre-empted a state's employee classification test must somehow wholly prohibit the use of independent contractors. As demonstrated above, this premise finds no home in Supreme Court precedent. The question is not whether a state law prohibits a motor carrier from having independent contractor drivers. Instead, it is whether the State is substituting "its own governmental commands for 'competitive market forces in determining . . . the services that [transportation companies] will provide." *Rowe*, 552 U.S. at 371. When, as here, the State's interference with a "self-imposed undertaking," like an independent contractor agreement, is predicated on "a state policy," those claims "will escape preemption only if the law of the relevant State permits [the parties] to contract around those rules." *Ginsberg*, 134 S.Ct. at 1432-33.

The Ninth Circuit has removed any doubt regarding whether parties can contract around the application of California's reclassification standards. In *Ruiz v. Affinity Logistics, Corp.*, 667 F.3d 1318 (9th Cir. 2013), a group of last mile delivery drivers sued for violations of the California Labor Code alleging that they had been misclassified as independent contractors. *Id.* at 1321. Relying on the parties' contractual choice-of-law provision, the district court applied Georgia law to determine whether plaintiffs were improperly classified. *Id.* After a three-day bench trial, the district court found that the plaintiffs were properly classified as independent contractors under Georgia law. The plaintiffs appealed.

In their appeal, the plaintiffs asserted that the district court erred in applying Georgia law. *Id.* at 1322. After analyzing the differences between California and

Georgia law and the application of California's choice-of-law rules, the Ninth Circuit concluded that the district court should have applied California law. *Id.* at 1325. In doing so, the court concluded, the "the parties' choice of Georgia law is unenforceable in California." *Id.* Consequently, despite the notion that it is theoretically possible for an independent contractor relationship to survive California's *Borello* test, the FAAAA preempts even the test's application to owner operators because it cannot be contracted around and embodies a state policy that "cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Ginsberg*, 134 S.Ct. at 1432.

## CONCLUSION

The Supreme Court has made clear state's may not use their policy judgments, whether embodied in a consumer fraud law (*Wolens*) or a covenant of good faith and fair dealing (*Ginsberg*), to alter or impair the enforcement of contracts freely made in the marketplace. The Commissioner's application of the *California's policy judgment* regarding who should be considered an employee and thus have their relationship governed by the California Labor Code, and who should be considered an independent contractor – and thus have their relationship governed by the terms of the contract they signed – does precisely this.

The Commissioner's Motion cites no authority that would allow her to disregard the Supreme Court's pronouncements. Having failed to cite any authority that would defeat the CTA's claims as a matter of law, CTA respectfully requests that the Commissioner's Motion be denied and that the CTA be allowed to proceed on the claims that it has pled.

Dated: August 29, 2016

         By: */s/Adam C. Smedstad*
            Adam C. Smedstad
            Christopher C. McNatt, Jr.

            Attorneys for Plaintiff,
            California Trucking Association

## **PROOF OF SERVICE**

I hereby certify that on August 29, 2016, the foregoing was filed electronically. Notice of this filing will be sent to Miles E. Locker at mlocker@dir.ca.gov by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                    */s/Adam C. Smedstad*
                                                  Adam C. Smedstad

4827-9023-7495, v. 8