MILES E. LOCKER, California State Bar No. 103510
mlocker@dir.ca.gov
DIVISION OF LABOR STANDARDS ENFORCEMENT
Department of Industrial Relations
State of California
455 Golden Gate Avenue, 9th Floor
San Francisco, CA  94102
Tel:  (415) 703-4863
Fax: (415) 703-4807

Attorney for Defendant, Julie Su

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, a California non-profit corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>JULIE SU, in her official capacity as Labor Commissioner,<br><br>                    Defendant. | Case No. 16CV1866 CAB MDD<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM<br>(FRCP 12 (b) (6) )<br><br>Date:  September 12, 2016<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

## INTRODUCTION

Plaintiff, California Trucking Association ("CTA"), presents an interpretation of Federal Aviation Administration Authorization Act ("FAAAA") preemption that is not supported by any decision of the United States Supreme Court, that is totally at odds with controlling Ninth Circuit precedent, and that has been explicitly rejected in cases involving the precise issue presented here by two federal district courts in the Ninth Circuit and by the California Supreme Court.

## ARGUMENT

There is not a single decision of the United States Supreme Court construing the FAAAA (or, for that matter, the Airline Deregulation Act) to preempt a generally

applicable state wage and hour law (whether founded upon statute or judicially created common law) that is applied by a state to motor carriers (or airlines) in the exact same way that it is applied to any other business operation and its workers.   Not one. Instead, we have cases concerning state efforts to regulate airlines' consumer advertising (*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)), a claim brought under a state consumer fraud law to enjoin an airline from devaluing the benefits associated with its frequent flyer program (*American Airlines v. Wolens,* 513 U.S. 219 (1995)), a state law that operated to require a motor carrier delivering tobacco products to verify that the person to whom the delivery is made is of legal age to purchase tobacco (*Rowe v. New Hampshire Motor Transp. Assn.,* 552 U.S. 364 (2008), a lawsuit brought under a state's consumer protection act to recover damages from a towing company that towed the plaintiff's car, and subsequently, disposed of the vehicle without compensating the plaintiff (*Dan's City Used Cars, Inc. v. Pelkey,* 133 S.Ct. 1769 (2013), and finally, a lawsuit brought by an airline customer alleging breach of the implied covenant of good faith and fair dealing stemming from the airline's cancellation of his membership in a frequent flyer program (*Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422 (2014)).

So when the CTA argues that "the Supreme Court has made clear state's [sic] may not use their policy judgments, whether embodied in a consumer fraud law (*Wolens*) or a covenant of good faith and fair dealing (*Ginsberg*), to alter or impair the enforcement of contracts freely made in the marketplace" (MPAs In Opposition to Motion to Dismiss, p. 11.), it is critical to understand that the contracts the Court is referencing are *consumer* contracts with airlines, not contracts between an airline (or a motor carrier) and its workers.

This Circuit has repeatedly rejected arguments advanced by motor carriers and airlines that generally applicable employment laws are subject to FAAAA (or Airline Deregulation Act) preemption.  The Ninth Circuit first held that that the FAAAA does not preempt the state's prevailing wage laws.  (*Californians for Safe & Competitive*

*Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998).) Next, it held that the Airline Deregulation Act does not preempt a generally applicable city anti-discrimination law. (*Air Transport Ass'n. v. City of San Francisco,* 266 F.3d 1064, 1071 (9th Cir. 2001).) And then, it held that the FAAAA does not preempt the state's meal and rest break laws. (*Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (2014).)

CTA's contention that the FAAA requires enforcement of contracts between motor carriers and their drivers, and prohibits the state from applying state law or state policy to "re-order" any provisions in such contracts, is fundamentally at odds with each of these Ninth Circuit cases. For example, under *Mendonca,* if the work performed is subject to the prevailing wage law, the motor carrier cannot rely on its contract with a driver to pay less than the prevailing wage; the requirements of the state prevailing wage law trump contractual provisions that establish a lower wage. That's the basic premise behind minimum labor standards – these are wage and hour requirements that cannot be undercut by private agreement. (See, e.g., Labor Code § 1774: "The contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract.")

Moreover, when it comes to *generally applicable* labor standards, there is simply no basis for FAAAA preemption: "[B]ecause the Prevailing Wage Law applies to *all* employers involved in public works, the fifty year-old Prevailing Wage Law cannot be construed as the state's de facto attempt to regulate motor carriers as prohibited by section 14501 [of the FAAAA]." (*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca* , 957 F.Supp.1121, 1129 (N.D. Cal. 1997) , *aff'd* at 152 F.3d 1184 (9th Cir. 1998).) "The [challenged] Ordinance is a broad law applying to hundreds of different industries…. It is not focused upon air carriers." (*Air Transport Ass'n.*, 266 F.3d at 1072.) And in *Dilts,* the challenged meal and rest break laws "are normal background rules for almost *all* employers doing business in the state of California." (*Dilts,* 769 F.3d at 647.) And here, CTA does not dispute the

fact that California's long-standing *Borello* multi-factor test to determine whether a person hired to provide a service is an independent contractor or an employee is generally applicable to *all* service arrangements and all industries in California; it is not targeted at the motor carrier industry.

CTA argues that all of these Ninth Circuit cases can be ignored because all of them involve "motor carriers who have *chosen* to use employees to transport freight," and "[t]he application of wage and hour laws to drivers who were hired as employees is analytically distinct from using state law to upend … contractual arrangements" between drivers (referred to in those contracts as independent contractor "owner-operators") and motor carriers. (MPAs In Opposition to Motion to Dismiss, p. 9.) First, it's really not clear how "upending" a contract that says an employee who drives a vehicle for a motor carrier will be paid an amount less than the state mandated prevailing wage (a contract that the Ninth Circuit can be "upended" without running into FAAAA preemption) is any different than "upending" a contract that says this driver is an independent contractor not entitled to payment of the prevailing wage. CTA seems to think by entering into a contract that designates a driver as an independent contractor, a motor carrier magically obtains FAAAA immunity from all of those state laws that the Ninth Circuit held not preempted by the FAAAA, every one of which protects persons who are employees under California law (whether designated as such by their employers or improperly classified by their employers as independent contractors). Surely, the FAAAA was not intended by Congress to facilitate such subterfuge.

Second, the Ninth Circuit has repeatedly explained that there was no congressional intent, in enacting the FAAAA, to preempt generally applicable state employment laws; in distinction from the congressional intent to preempt claims founded upon state consumer protection laws:

> Laws are more likely to be preempted when they operate at the point where carriers provide services to customers at specific prices….

> *Morales* and *Mendonca* both stand for the proposition that the Airline Deregulation Act and the FAAAA do not preempt laws that regulate … inputs [that] operate one or more steps away from the moment at which the firm offers its customer a service for a particular price…. [G]enerally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide. Such laws are not preempted even if they raise the overall cost of doing business or require a carrier to re-direct or reroute some equipment…. Nearly every form of state regulation carries some cost. The statutory text tells us, though, that in deregulating motor carriers and promoting maximum reliance on market forces, Congress did not intend to exempt motor carriers from every state regulatory scheme of general applicability. (*Dilts,* 769 F.3d at 646-647.)

There is, of course, nothing in the history of the enactment of the FAAAA that reveals a Congressional intent to preempt generally applicable state law tests used to determine, for purposes of the enforcement of state wage and hour laws, exactly who is an employee protected by those laws. Indeed, it defies credulity to think that the Ninth Circuit would find any such intent on the part of Congress, after having already concluded (in *Mendonca* and *Dilts*) that Congress had no intent to exempt motor carriers from wage and hour laws of general applicability.

This distinction between state wage and hour claims and consumer claims was forcefully stated in *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016), in holding that the Illinois Wage Payment and Collection Act, is not preempted by the FAAAA:

> [T]here is a relevant distinction for purposes of FAAAA preemption between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce. Laws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption. Laws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption. The Supreme Court's preemption decisions do not counsel a different conclusion. (*Id.*,

at 1054.)

CTA fails to comprehend the significance of this distinction between generally applicable state employment laws and consumer protection laws. As a consequence, its reliance on *Northwest* is misplaced. There, the Supreme Court held that because an airline customer's implied covenant of good faith and fair dealing claim "seeks to enlarge his contractual agreement" with the airline, the claim is preempted by the Airline Deregulation Act. (*Northwest*, 134 S.Ct. at 1433-1434.) The Court explained: "When the law of a State does not authorize the parties to free themselves from the covenant, a breach of covenant claim is preempted under the reasoning of *Wolens*." (*Id.,* at 1432.)

CTA argues, based on *Northwest*, that because California law does not permit a motor carrier and its drivers to "contract around" the *Borello* test, the state's use of the *Borello* test is preempted by the FAAAA. But what can or cannot be "contracted around" in regards to consumer claims that directly and substantially relate to an airline's prices and services, and whether the Airline Deregulation Act preempts such claims, has nothing whatsoever to do with determinations of employee status in connection with the enforcement of generally applicable state wage and hour laws, and nothing whatsoever to do with whether the FAAAA preempts the state from enforcing its generally applicable wage and hour laws (or from making determinations, under generally applicable state law, whether a worker is covered by such laws).

CTA correctly states that the unanimous decision of the California Supreme Court in *People ex rel. Harris v. Pac Anchor Transportation, Inc.*, 59 Cal.4th 772 (2014), *cert. denied* at 135 S.Ct. 1400 (2015), holding that the FAAAA does not preempt a state law employee/independent contractor misclassification claim, is not binding on this Court. Though not binding, the reasoning of this decision, extensively discussed in our opening brief, is persuasive and firmly grounded upon the Ninth

Circuit's decision in *Mendonca*.

Moreover, there are two district court decisions in the Ninth Circuit that address the same issue, and that have reached the same conclusion as that reached by the California Supreme Court in *Harris*. The first, *Robles v. Comtrak Logistics, Inc*., 2014 WL 7335316 (E.D. Cal. 2014), considered a motor carrier's FAAAA preemption challenge to a cause of action seeking a declaration that the motor carrier unlawfully misclassified its drivers as independent contractors. The motor carrier argued that the misclassification claims are an "attempt by Plaintiff dictate the terms of [Defendant's] contractual relationships with its owner-operators," and are thus "preempted by the FAAA Act." (*Id.*, at *4.) Like the CTA here, Comtrak relied on *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009). Judge Mendez found this reliance misplaced: "The FAC does not seek to *require* Defendant to use only employee drivers rather than independently contracted drivers as attempted in the [*American Trucking Associations*] action. Rather, it seeks to hold Defendant accountable for its obligation to properly classify its drivers." (*Ibid.*)

Judge Mendez considered the *Harris* decision, finding its reasoning "persuasive and concur[ring] in its holding that generally applicable laws regarding the classification of employees are not the type of regulation Congress was attempting to target in the passage of the FAAA Act, as they do not seek to regulate the 'intrastate prices, routes, or services of motor carriers.'" (*Id.*, at *6.) The court made short work of Comtrak's contention that *Northwest, Inc. v. Ginsberg* compels a finding of FAAAA preemption: "*Ginsberg* has little to no bearing on this case…. Defendant strains to connect the reasoning therein to its contention here that Defendant should not be subjected to California's generally applicable labor laws." (*Id.*, at *7.) Finally, Judge Mendez characterized as "entirely unpersuasive" Comtrak's contention that *Dilts* should not apply because it involved employee drivers rather than drivers contractually designated as independent contractors. (*Id.*, at *8.)

*Comtrak* was followed by *Villalpando v. Exel Direct Inc.*, 2015 WL 5179486

(N.D. Cal. 2015), a wage and hour lawsuit stemming from the alleged misclassification of delivery drivers as independent contractors rather than employees. Exel argued that all of the drivers' claims were preempted by the FAAAA, because they would have the effect of "requiring it to adopt a business model based on the use of employees." (*Id.*, at \*29.) The court, relying on *Mendonca, Dilts, and Harris,* found no FAAAA preemption, reasoning: "Exel may adopt whatever business model it wishes. What it cannot do is treat its drivers as employees while avoiding California's wage and hour rules by requiring its drivers to enter into a contract that simply *calls* the drivers independent contractors." (*Ibid.*)

Now CTA comes before this Court, asking for a declaration that the FAAAA preempts the State Labor Commissioner from applying the generally applicable state common law *Borello* test to determine, in the context of the Commissioner's enforcement of generally applicable state wage and hour laws, whether drivers working for motor carriers are employees (entitled to the protections of those wage and hour laws) or independent contractors. CTA's claim simply fails as a matter of controlling Ninth Circuit law.

Whether CTA's claim might succeed before the First Circuit is debatable; but whether it can possibly succeed before the Ninth Circuit is not. CTA points to two recently decided First Circuit cases that it contends support its claim – *Massachusetts Delivery Association v. Coakley*, 769 F.3d 11 (1st Cir. 2014) and *Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (2016). In those cases, the First District considered whether "Prong 2" of a recently enacted Massachusetts law that establishes a three-part test to differentiate employees from independent contractors, is preempted by the FAAAA. Under the Massachusetts law, a person performing any service is considered to be an employee unless the requirements of each prong of the three-part test are met: (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of the service and in fact; *and* (2) the service is performed outside the usual course of the

business of the employer; *and*, (3) the individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed. (*Schwann*, at 433.)

The First Circuit concluded that Prong 2 of this law is preempted by the FAAAA, and that Prong 2 is severable from the other parts of the law, leaving Prongs 1 and 3 as the test in cases involving motor carriers and their drivers. The *Schwann* court noted: "Prong 2 also stands as something of an anomaly because it makes any person who performs a service within the usual course of the enterprise's business an employee for state wage and hour purposes. By contrast, under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the laws of many states, the relationship between the service performed and the usual course of the enterprise's business is simply one of many factors to be considered." (*Id.*, at 438.)

Indeed, in California, under the *Borello* test, this factor is considered as just one of fourteen separately identified factors to be considered, none of which is determinative in isolation. It is not even considered to be the most important factor; that designation going to the "right to control the manner and means of accomplishing the result desired." (*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341, 350-354.) So in Massachusetts, Prong 2 effectively prevents motor carriers from using independent contractors as drivers (since driving is not "outside the usual course of the business" of the motor carrier), while in California, the *Borello* test does not preclude motor carriers from using the services of independent contractors. Thus, it is difficult to see the applicability of these First Circuit cases to the issue now before this Court. But whether applicable or not, *Coakley* and *Schwann* set out the controlling law in the First Circuit, not the Ninth.

//
//
//
//

9
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

## CONCLUSION

For all of the reasons set forth herein, the State Labor Commissioner respectfully requests that the complaint herein be dismissed.


Dated:  September 2, 2016         s/ Miles E. Locker
                                  Attorney for Defendant Julie Su
                                  E-mail: mlocker@dir.ca.gov